**Marc P. Berger**
**Sanjay Wadhwa**
**Gerald Gross**
**Jorge G. Tenreiro**
**James Hanson**
**Attorneys for the Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-9145 (Tenreiro)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | **COMPLAINT** |
| ) | |
| **v.** ) | **ECF CASE** |
| ) | |
| **GOLDSKY ASSET MANAGEMENT, LLC** ) **and** ) | |
| **KENNETH GRACE,** ) | **18 Civ. 8870** |
| ) | |
| **Defendants.** ) | |

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), for its

complaint against Defendants Goldsky Asset Management, LLC ("Goldsky") and Kenneth

Grace ("Grace") (collectively, "Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      This action involves a multi-year fraudulent scheme perpetrated by Goldsky, a

New York-based investment advisory firm, and Grace, who is Goldsky's owner and managing

director, to solicit U.S.-based investors to invest in a Delaware-based fund Defendants purported

to manage – Goldsky Global Alpha Fund, LP ("Goldsky Fund") – by making a series of

materially false representations in public filings with the Commission and to investors generally on the internet.

2.     From no later than September 2016 through at least August 2018 (the "Relevant Period"), Goldsky and Grace, among other things, falsely claimed that:

> (a) Goldsky was managing anywhere between $5 million and more than $100 million in assets – when, in fact, they knew that Goldsky managed no assets during the Relevant Period;

> (b) the Goldsky Fund had earned 19.45% annual returns and 70.33% monthly returns since inception, and 25.30% returns for the year ended September 30, 2017 (all calculated in conformance with generally accepted accounting principles ("GAAP")) – when, in fact, the Goldsky Fund had engaged in no investment activity at all, and had not achieved any investment returns; and

> (c) Goldsky had retained an outside auditor, asset custodian, fund administrator and prime banker – when, in fact, Goldsky had not retained and/or received any services from any outside firms at all during the Relevant Period.

3.     During the Relevant Period, Defendants, who maintained a virtual office in Manhattan, knowingly made false public filings with the Commission in order to make the information in the filings appear consistent with their claims made on the internet.  They also actively sought to avoid scrutiny from the Australian regulatory authorities, by knowingly and falsely claiming that Goldsky and Grace had no Australian investors.

## VIOLATIONS

4.     By engaging in the conduct set forth in this Complaint, Goldsky and Grace violated Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15

U.S.C. §§ 77q(a)(1) and 77q(a)(3)], and Sections 206(4) and 207 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(4), 80b-7] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].  The Commission seeks a final judgment: (i) permanently enjoining the Defendants from engaging in the acts, practices, transactions and courses of business alleged herein; (ii) imposing civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (iii) ordering such other and further relief the Court may find appropriate or necessary for the benefit of investors.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Section 214(a) of the Advisers Act [15 U.S.C. § 80b-14(a)].  Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  A substantial part of the events or omissions giving rise to the claims herein occurred in the Southern District of New York.  Among other things, Defendants maintained a virtual office in

this District and provided potential investors an address and telephone number located within this District, and Defendants' false and misleading statements and fraudulent schemes were made and directed to the public at large, including residents of this District.

## DEFENDANTS

8.      **Grace**, age 53, is a resident of Kingscliff, New South Wales, Australia.  Grace is the sole owner and manager of Goldsky.

9.      **Goldsky** is a limited liability company organized on or around February 2015 under the laws of the State of New York, with a virtual office in New York, New York.  Goldsky was an investment adviser registered with the Commission since its registration statement was approved on September 28, 2016, and until the effective date of its withdrawal from registration on August 22, 2018.  Goldsky purported to be the investment adviser to the Goldsky Fund, as well as to two other entities: "Goldsky Global Alpha Fund (Master) Limited" ("Goldsky Master Fund") and a "Goldsky Global Alpha Fund Limited" ("Goldsky Offshore Fund," together with the Goldsky Fund and the Goldsky Master Fund, the "Funds"), both purported Cayman Island entities.

## RELEVANT ENTITIES

10.      The **Goldsky Fund** is a limited partnership organized on or around February 2015 under the laws of the State of Delaware, purportedly organized to serve as an investment vehicle for investments from accredited investors in the U.S.  The Goldsky Fund was purportedly managed by and received investment advisory services from Goldsky.

11.      The **Goldsky Offshore Fund** is a Cayman Islands exempt business company, purportedly organized to serve as an investment vehicle for investments from tax-exempt and offshore investors from the U.S.  The Goldsky Offshore Fund was purportedly managed by and

received investment advisory services from Goldsky.

      12.    The **Goldsky Master Fund** is a Cayman Islands exempt business company, purportedly organized to serve as "master" fund in a "master-feeder" fund structure, that would receive the Goldsky Fund's and the Goldsky Offshore Fund's investments, and was purportedly managed by and received investment advisory services from Goldsky.

**FACTS**

**A.**    **Goldsky and Grace Made Materially False and Misleading Statements in Public Filings with the Commission**

*Background on Goldsky and Grace's Form ADV Filings*

      13.    Form ADV is an SEC form used by investment advisers to register with both the Commission and state securities authorities.  It consists of two parts, both of which are required to be filed with the Commission, and both of which are publicly available once filed with the Commission:  Form ADV Part 1 and Form ADV Part 2.

      14.    Form ADV Part 1 requires the investment adviser to disclose, among other things, information about its business, amount of assets under management, ownership, clients, employees, business practices, and affiliations, and information about any disciplinary events of the adviser or its employees.  Form ADV Part 2 requires a "brochure" to be directly disseminated to prospective investors (*i.e.*, disclosure statements) written in plain English.  It provides prospective investors additional information about the advisory firm, such as the types of advisory services offered, the adviser's fee schedule, disciplinary information, conflicts of interest, and the educational and business background of management and key advisory personnel of the adviser.

      15.    Between September 2016 and August 2017, Goldsky and Grace filed four Forms ADV relevant to this action, each of which Grace signed as Goldsky's Managing Director:  a

5

Form ADV dated September 15, 2016 ("September 2016 ADV"), to register Goldsky as an

investment adviser with the Commission; a Form ADV dated December 5, 2016 ("December

2016 ADV"); a Form ADV dated March 28, 2017 ("March 2017 ADV"); and (iv) a Form ADV

dated August 15, 2017 ("August 2017 ADV") (collectively referred to sometimes hereinafter as

"Forms ADV").

16.     Goldsky and Grace also filed two Form ADV brochures as required by Form

ADV Part 2 – one on September 9, 2016 (the "2016 Brochure") and one on March 1, 2017 (the

"2017 Brochure") (collectively, the "Brochures").

17.     The September 2016 ADV, the December 2016 ADV, and the March 2017 ADV,

as well as the Brochures, listed Goldsky's principal office and place of business as 375 Park

Avenue, Suite 2607, New York, New York, 10152 (the "Park Avenue Address"), listed a

telephone number with Manhattan's (212) area code (the "212 Phone Number") as contact

information, and named Grace as the contact person for Goldsky.

18.     Goldsky's registration statement, filed as the September 2016 ADV, was

approved by the Commission, and became effective on September 28, 2016.

19.     The Brochures represented that Goldsky was offering and selling interests in the

Goldsky Fund to accredited investors in the U.S., and interests in the Goldsky Offshore Fund to

tax-exempt investors in the U.S., described the Funds' purported investment strategy, and

included an appendix with Grace's biography, which also identified the Park Avenue Address as

Grace's address.

20.     The Brochures directed readers to visit the Commission's website should the

reader require more information about Goldsky, and to contact Grace at the Park Avenue

Address and/or the 212 Phone Number for any such additional information.

stated that Goldsky managed discretionary assets of approximately $104,000,000.

23.     As Goldsky and Grace knew or recklessly disregarded, the foregoing statements were all materially false and misleading because neither Goldsky nor the Funds had any assets under management during the Relevant Period.

### Goldsky and Grace Falsely Claim to Have Retained Crucial Service Providers

24.     Goldsky and Grace knowingly, materially and falsely also claimed in each of the Forms ADV that Goldsky and the Funds had retained an auditor, an asset custodian, a prime broker and a fund administrator, and that Goldsky's and the Funds' financial statements had been prepared, and that they had been prepared in accordance with GAAP.

25.     In each of Goldsky's four Forms ADV filed with the Commission, Goldsky and Grace represented that the Funds were among the "private funds" Goldsky managed, and that they had retained "Ernst & Young, Ltd" as the "private fund's" auditor, with the Cayman Islands as the location of the Ernst & Young office responsible for auditing the private fund's financial statements.

26.     In each of Goldsky's four Forms ADV filed with the Commission, Goldsky and Grace represented that they had retained "The Northern Trust Company" as Goldsky's and the Funds' prime broker, as well as the asset custodian for the Funds, with a Chicago, Illinois address as the principal office of the prime broker and asset custodian.

27.     In the 2016 Brochure, Goldsky and Grace represented that Goldsky "executes all transactions for [the Funds] through The Northern Trust Company," and that the company purportedly provides "clearing, custodial and record keeping services" to Goldsky.

28.     In each of Goldsky's four Forms ADV, Goldsky and Grace represented that "Citco Fund Services (Cayman Islands) Ltd." was the administrator, and that it prepared and sent

investor account statements to investors.

29.     As Goldsky and Grace knew or recklessly disregarded, these statements were materially false and misleading.  In reality, for the period covered by Goldsky's four Forms ADV (September 15, 2016 through August 15, 2017), none of Goldsky, Grace, or the Funds, had any agreements with Ernst & Young, Northern Trust, or Citco to perform any fund services. Moreover, no offices of those entities were "responsible" for providing any services to Goldsky, or to any of the Funds, and nor did they provide any such services.

30.     As Goldsky and Grace also knew or recklessly disregarded, at no time during the Relevant Period had the Funds ever retained any auditor, prime broker, asset custodian or administrator.  Indeed, it was not until April 17, 2018 that Goldsky executed a fund administration agreement, yet not with Citco.  Neither Goldsky nor Grace amended any of the Forms ADV they filed to correct their false and misleading information with respect to their purported service providers.

### Grace Falsely Claims to Be Principally Located in the United States

31.     Goldsky's Brochures, as well as other documents, represented that Goldsky and Grace planned to solicit accredited investors in the United States to purchase interests in the Goldsky Fund, and tax-exempt U.S. investors as well as non-U.S. investors to purchase interests in the Goldsky Offshore Fund.

32.     To this end, Grace filed a Form D with the Commission on behalf of the Goldsky Fund on November 29, 2016 (identifying himself as the Goldsky Fund's Manager and executive officer), disclosing the Goldsky Fund's intended sales of an indefinite amount of Goldsky Fund's pooled investment fund interests to certain accredited investors in the U.S. (the "Goldsky Fund's

Form D").[1]

33.     As they did in the September 2016 ADV, the December 2016 ADV, and the March 2017 ADV, as well as the Brochures, Goldsky and Grace represented on the Form D that their principal office and place of business was the Park Avenue Address, listed the 212 Phone Number as contact information, and named Grace as the contact person for Goldsky.

34.     As Defendants knew or recklessly disregarded, their representations were materially false and designed to mislead investors into believing that Defendants were physically located in Manhattan.

35.     In fact, as Defendants knew, the Park Avenue Address was a "virtual" office – they never maintained a physical office in the United States.

### Goldsky and Grace's Subsequent Statements in Public Filings

36.     On August 15, 2017, Goldsky and Grace filed the August 2017 ADV, this time listing as Goldsky's principal office and place of business "Level 29, Chifley Tower, 2 Chifley Square, Sydney, Australia."

37.     In the August 2017 ADV, Goldsky and Grace no longer indicated that Goldsky was a "large advisory firm" with certain amounts of assets under management, and represented that Goldsky has its "principal office and place of business outside the United States."

38.     In the August 2017 ADV, Goldsky and Grace also corrected the false statements that Goldsky had $107 million in assets under management and twenty-seven accounts, instead stating "$0" and "0," respectively.

39.     On August 22, 2018, Goldsky filed with the Commission a Form ADV-W, Notice

---

[1]     A Form D is a Commission form used to file a notice of an offering of securities that is purportedly exempt from statutory registration requirements.  Privately held companies that raise capital are required to file a Form D with the Commission to declare an exempt offering of securities.

of Withdrawal from Registration as an Investment Adviser.  Its current registration status is

"terminated."

**B.      Goldsky and Grace Made Materially False and Misleading Statements on Goldsky's
         Website**

40.      Beginning no later than late 2017, Defendants maintained at least two websites

with identical contents, with the URLs https://goldskyglobal.com and http://goldsky.com.au,

with visitors to the .au website being redirected to the .com website (both websites, together,

referred to hereinafter as the "Goldsky Website").

41.      During the Relevant Period, the Goldsky Website was available to the public at

large, and Grace controlled and used the Goldsky Website to falsely tout Goldsky's purported

successes.

42.      Goldsky's Website claimed that as a result of being managed by "Goldsky Asset

Management," (*i.e.*, Goldsky) the hedge fund it referred to simply as "Goldsky Global Alpha

Fund" earned 19.45% compounded annual returns since inception and 70.33% compounded

monthly returns since inception, and claimed that the Goldsky Fund had earned 25.30% returns

for the year ended September 30, 2017.

43.      Goldsky's Website further claimed that the "Goldsky Global Alpha Fund"

"targets $200 million under management" and "at the end of July [2017] was managing at least

$105 million capital, less than three years since its launch in February 2015."

44.      All of these representations were false, since, as Goldsky and Grace knew or

recklessly disregarded, Goldsky did not manage, and had not ever managed, anything close to

$105 million in assets; had generated no such returns on any investments; and had no reasonable

basis to project $200 million of assets under management.

45.      Investors in the United States were targeted by Goldsky's Website, which listed

the Park Avenue Address and the 212 Phone Number as contact information for the Goldsky

Fund and as the "World Headquarters" of the Goldsky entities.

46.     Goldsky's Website also invited prospective investors to express interest in

investing in the Goldsky Fund by sending an email to invest@goldskyglobal.com or by calling

the 212 Phone Number.

47.     Goldsky's Website referred prospective investors via a link to Goldsky's Form

ADV Part 2 "for important information about the fund manager," which contained additional

information targeting U.S. investors, including the Park Avenue Address, the 212 Phone

Number, and statements in the 2016 Brochure to the effect that Goldsky sought and would seek

investments from accredited investors in the U.S.

48.     Goldsky's Website was accessible by prospective investors in the United States

from at least late 2017 through early 2018.

49.     Goldsky's Forms ADV referred readers to Goldsky's Website.

**C.     Goldsky and Grace Lied to Australian Regulators about their Activities in Australia**

50.     On or around March 23, 2017, Goldsky and Grace submitted an "Application for

Class Order Relief" to the Australian Securities and Investments Commission ("ASIC"), which

regulates Australian securities markets, including investment advisers.

51.     In the application, Goldsky and Grace represented to ASIC that Goldsky is a

"foreign financial service provider" under Australian law because it "was established and

registered on 28 September 2016 with the Commission as an Investment Adviser to provide

investment advisory services in the United States of America[.]"

52.     Goldsky and Grace relied on Goldsky's registration with the Commission to claim

exemption from regulation by ASIC by registering as a "registered foreign company" pursuant to

Section 402A of the Australian Corporations Act.

53.     Moreover, Goldsky and Grace falsely told ASIC that no Australian investors were invested with any of their funds.

54.     Goldsky and Grace knew that their claim to be exempt from regulation by ASIC was fraudulent because they knew that they were accepting investments from Australian investors and were not acting as a "foreign financial service provider" providing investment advisory services in the United States, as they had no United States investors.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act**
**(Goldsky and Grace)**

55.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 54 of this Complaint.

56.     During the Relevant Period, Goldsky and Grace, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, have: (a) employed devices, schemes and artifices to defraud; and (b) engaged in transactions, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers.

57.     By reason of the foregoing, Goldsky and Grace have violated, and, unless enjoined, will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

<u>**SECOND CLAIM FOR RELIEF**</u>
**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder**
**(Goldsky and Grace)**

58.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 54 of this Complaint.

59.     During the Relevant Period, Goldsky and Grace, acting as an investment adviser, directly or indirectly, singly or in concert, by use of the mails or any means or instrumentality of interstate commerce or of the mails, have employed acts, practices, or course of business which are fraudulent, deceptive, or manipulative, or have made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in a pooled investment vehicle.

60.     By reason of the foregoing, Defendants Goldsky and Grace, directly or indirectly, singly or in concert, have violated, are violating, and unless enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### THIRD CLAIM FOR RELIEF
### Violations of Section 207 of the Advisers Act
### (Goldsky and Grace)

61.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 54 of this Complaint.

62.     Beginning no later than September 2016 through at least August 2017, Goldsky and Grace,  by use of the mails, and the means and instrumentality of interstate commerce, directly and indirectly, willfully made untrue statements of material fact in, and omitted to state material facts required to be stated in, reports filed with Commission.

63.     By reason of the foregoing, Goldsky and Grace, directly and indirectly, have violated and, unless enjoined, may continue to violate Section 207 of the Advisers Act [15 U.S.C. § 80b-7].

## FOURTH CLAIM FOR RELIEF
**Aiding and Abetting Goldsky's Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act and of Sections 206(4) and 207 of the Advisers Act and Rule 206(4)-8 thereunder (Grace)**

64.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 54 of this Complaint.

65.     As alleged above, Goldsky violated Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(3)], and Sections 206(4) and 207 of the Advisers Act [15 U.S.C. §§ 80b-6(4), 80b-7] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

66.     Grace knew or recklessly regarded that Goldsky's conduct was improper and in violation of law and knowingly or recklessly provided substantial assistance to Goldsky in this conduct.

67.     By virtue of the foregoing, Grace aided and abetted and, unless enjoined, will continue aiding and abetting, violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(3)], and of Sections 206(4) and 207 of the Advisers Act [15 U.S.C. §§ 80b-6(4), 80b-7] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the Commission a Final Judgment:

### I.

Permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of each of the securities laws and rules promulgated thereunder as alleged herein.

15

**II.**

Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)] and Section 209(e) of the Advisers Act, [15 U.S.C. § 80b-

9(e)].

**III.**

Granting such other and further relief the Court may find appropriate or necessary for the

benefit of investors.

Dated:   September 27, 2018
        New York, New York

                                        Respectfully submitted,

                                        Marc P. Berger
                                        Sanjay Wadhwa
                                        Gerald Gross
                                        Jorge G. Tenreiro
                                        James Hanson

                                        New York Regional Office
                                        SECURITIES AND EXCHANGE
                                          COMMISSION
                                        200 Vesey Street, Suite 400
                                        New York, New York 10281
                                        (212) 336-9145 (Tenreiro)
                                        *Attorneys for the Plaintiff*